1   ROBERT E. FREITAS (SBN 80948)
        rfreitas@ftklaw.com
2   JASON S. ANGELL (SBN 221607)
        jangell@ftklaw.com
3   JESSICA N. LEAL (SBN 267232)
        jleal@ftklaw.com
4   FREITAS TSENG & KAUFMAN LLP
    100 Marine Parkway, Suite 200
5   Redwood Shores, California 94065
    Telephone:    (650) 593-6300
6   Facsimile:    (650) 593-6301

7   Attorneys for Defendant
    HannStar Display Corporation
8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                    SAN FRANCISCO DIVISION

12  IN RE: TFT-LCD (FLAT PANEL)          No. 3:07-md-1827-SI
    ANTITRUST LITIGATION
13                                       **MDL No. 1827**

14

15  *Best Buy Co., Inc., et al. v. AU Optronics Corp.,*   **HANNSTAR DISPLAY**
    *et al.,* No. 10-cv-4572 SI              **CORPORATION'S NOTICE OF**
16                                           **MOTION AND MOTION FOR**
                                             **JUDGMENT AS A MATTER OF LAW**
17                                           **PURSUANT TO FED. R. CIV. P. 50(B)**

18                                           **MEMORANDUM OF POINTS AND**
                                             **AUTHORITIES**
19

20                                           Date:      November 15, 2013
21                                           Time:      9:00 a.m.
                                             Ctrm.:     10
22                                           Judge:     Hon. Susan Illston

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    LEGAL STANDARDS .................................................................................................... 2

II.   OVERVIEW OF THE PLAINTIFFS' DIRECT PURCHASES DAMAGES CASE ........ 3

III.  THE EVIDENCE IS NOT LEGALLY SUFFICIENT TO SUPPORT A FINDING
      OF DIRECT PURCHASE DAMAGES ...................................................................... 4

      A.   The Jury's Finding That The Toshiba Entities Did Not Violate The Law
           Renders Any Damage Award Entirely Speculative ................................................. 4

      B.   The Evidence Does Not Support A Finding That Other Alleged
           Conspirators Violated The Law ............................................................................. 5

           1.    Acer Display Co ............................................................................................ 6

           2.    NEC LCD Technologies Ltd ........................................................................ 6

           3.    Hydis Technologies Co., Ltd (BOE Hydis Technology Co., Ltd.) ............ 7

           4.    Unipac Optoelectronics ............................................................................... 8

           5.    Mitsubishi Electronics Corp ........................................................................ 8

           6.    Royal Philips Electronics N.V ..................................................................... 9

           7.    Toppoly Optoelectronics ............................................................................. 9

      C.   There Is No Evidence That HannStar Had Unlawful Contacts With Parties
           That Did Not Attend Crystal Meetings ................................................................. 10

      D.   The Plaintiffs Failed To Provide Sufficient Evidence Of Ownership Or
           Control .................................................................................................................. 11

IV.   THE PLAINTIFFS FAILED TO PROVE THE REQUISITE INDIVIDUAL
      INJURY IN FACT ........................................................................................................ 12

V.    THE PLAINTIFFS FAILED TO PROVE THAT THE APPLICATION OF
      MINNESOTA LAW TO HANNSTAR IS CONSTITUTIONAL .................................. 14

VI.   NO DAMAGES CAN BE AWARDED BASED ON PURCHASES OF SMALL
      PANEL PRODUCTS ................................................................................................... 14

VII.  THE PLAINTIFFS FAILED TO SATISFY THE REQUIREMENTS OF THE
      FTAIA ......................................................................................................................... 15

      A.   The FTAIA Applies To The Price Fixing Conduct Found By The Jury In
           The Answer To Question 2 ................................................................................... 16

      B.   The Plaintiffs Did Not Present Evidence Sufficient To Support A Finding
           Of Price Fixing In Import Commerce ................................................................... 16

      C.   The Jury Rejected The Domestic Injury Exception In The Answer To
           Question 5 ............................................................................................................. 18

      D.   The Plaintiffs Did Not Seek A Finding On The Applicability Of The
           Export Commerce Exception ................................................................................ 18

**TABLE OF CONTENTS**
**(continued)**

Page

E.  There Was No Finding That The Import Commerce Exception Applies, And No Evidence That Would Have Supported Such A Finding ......................... 18

F.  The Plaintiffs Failed To Establish An Intentional And Substantial Effect In The United States .............................................................................................. 20

VIII.  CONCLUSION .............................................................................................................. 22

# TABLE OF AUTHORITIES

**Page**

## Cases

*Al Barnett & Son, Inc. v. Outboard Marine Corp.*,
    64 F.R.D. 43 (D. Del. 1974) ................................................................................. 13

*Arthur Murray, Inc. v. Oliver*,
    364 F.2d 28 (8th Cir. 1966) ................................................................................. 13

*Assoc. Gen. Contractors of Cal. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983) ............................................................................................. 3

*AT&T Mobility LLC v. AU Optronics Corp.*,
    707 F.3d 1106 (9th Cir. 2013) ............................................................................. 14

*In re ATM Fee Antitrust Litig.*,
    686 F.3d 741 (9th Cir. 2012) ................................................................... 1, 11, 12

*In re Baby Food Antitrust Litig.*,
    166 F. 3d 112 (3rd Cir. 1999) ............................................................................... 8

*Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan*,
    203 F.3d 1028 (8th Cir. 2000) ............................................................................... 9

*Broadcast Music, Inc. v. Columbia Broad. Sys., Inc.*,
    441 U.S. 1 (1979) ................................................................................................ 15

*In re Citric Acid Litig.*,
    191 F.3d 1090 (9th Cir. 1999) ............................................................................... 9

*Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*,
    773 F.2d 1506 (9th Cir. 1985) ........................................................................... 3, 5

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
    542 U.S. 155 (2004) ...................................................................................... 16, 17

*Hartford Fire Ins. Co. v. California*,
    509 U.S. 764 (1993) .................................................................................. 1, 21, 22

*Liu v. Amerco*,
    677 F.3d 489 (1st Cir. 2012) ................................................................................. 9

*United States v. LSL Biotechs*,
    379 F.3d 672 (9th Cir. 2004) ......................................................................... 19, 20

*United States v. Melchor-Lopez*,
    627 F.2d 886 (9th Cir. 1980) ................................................................................. 6

*Minn-Chem, Inc. v. Agrium Inc.*,
    683 F.3d 845 (7th Cir. 2012) (*en banc*) ............................................................ 17

*Monsanto Co. v. Spray-Rite Service Corp.*,
    465 U.S. 752 (1984) ............................................................................................ 5

*Pecover v. Electronic Arts Inc.*,
    633 F. Supp. 2d 976 (N.D. Cal. 2009) ............................................................... 14

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000) ............................................................................................ 2

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. M 07-1827, 2012 WL 5383203 (N.D. Cal. Sept. 22, 2012) .................... 12, 13

*United States v. U.S. Gypsum Co.*,
    438 U.S. 422 (1978) ............................................................................................ 5

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    395 U.S. 100 (1969) .......................................................................................... 12

**Statutes**

15 U.S.C. section 6a .......................................................................... 16, 17, 18

15 U.S.C. section 6a(1)(A) ................................................................ 16, 17, 18

Fed. R. Civ. P. 50 ............................................................................................ 2

Fed. R. Civ. P. 50(a) .................................................................................... 2, 5

Fed. R. Civ. P. 50(b) ....................................................................................... 1

Fed. R. Civ. P. 1006 ........................................................................................ 7

Fed. R. Civ. P. 56 ............................................................................................ 2

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on November 15, 2013, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Susan Illston, defendant HannStar Display Corporation ("HannStar") will, and hereby does, move this Court, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, for an order granting judgment as a matter of law to HannStar on the following issues:

(1) The plaintiffs are entitled to no damages because the evidence presented at trial is insufficient to provide a non-speculative basis for a calculation of the "direct purchase" damages the plaintiffs sought at trial;

(2) The plaintiffs failed to present evidence sufficient to support a finding of injury in fact;

(3) HannStar further seeks judgment as a matter of law that the plaintiffs failed to present evidence sufficient to support the requirements of *Hartford Fire Ins. Co. v. California*, 509 U.S. 764 (1993); and

(4) The plaintiffs failed to present evidence sufficient to support a finding that they have satisfied the import commerce exception in the Foreign Trade Antitrust Improvements Act.

The motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support therefore, any papers filed in reply, the argument of counsel, and all papers and records filed in this matter, the trial transcripts and trial exhibits cited herein, and such other matters as the Court may consider.

# PRIOR RELEVANT ORDERS

Pursuant to this Court's April 9, 2012 Order (MDL Dkt. 5429), HannStar provides the following chart of relevant orders.

| Motions on Liability | | | | |
|---|---|---|---|---|
| Date | MDL Dkt. No. | Case No. | Plaintiff | Order |
| 11/06/12 | 7109 | 09-cv-4997<br>10-cv-4572<br>11-cv-0058<br>10-cv-1064<br>10-cv-0117<br>09-cv-5840<br>09-cv-5609<br>10-cv-4945 | AT&T<br>Best Buy<br>Costco<br>Dell<br>Electrograph<br>Motorola<br>Nokia<br>Target | Order Granting In Part and Denying In Part Defendants' Joint Motion for Partial Summary Judgment as to Nonparty Co-conspirators |

| Standing Under *Illinois Brick* | | | | |
|---|---|---|---|---|
| Date | MDL Dkt. No. | Case No. | Plaintiff | Order |
| 11/19/12 | 7188 | 09-cv-4997<br>10-cv-4572<br>10-cv-1064<br>10-cv-0117<br>10-cv-4945<br>11-cv-0058 | AT&T<br>Best Buy<br>Dell<br>Electrograph<br>Target<br>Costco | Order Denying Defendants' Joint Motion and Toshiba's Separate Motion for Partial Summary Judgment for Lack of Standing Under *Illinois Brick* and *ATM Fee* |
| 12/26/12 | 7422 | 11-cv-0058 | Costco | Order Granting In Part Defendants' Motion for Summary Judgment as to Costco's Indirect Purchases |
| 07/08/13 | 8282 | 10-cv-4572<br>11-cv-0058 | Best Buy<br>Costco | Order Denying Defendants' Motion for an Order Adopting a Procedure to Resolve Outstanding Questions of Fact With Respect to Plaintiffs' Standing Under Section 4 of the Clayton Act |

| Motions on Due Process | | | | |
|---|---|---|---|---|
| Date | MDL Dkt. No. | Case No. | Plaintiff | Order |
| 06/28/10 | 1823 | 09-cv-4997 | AT&T | Order Granting Defendants' Joint Motion to Dismiss and Granting Plaintiffs Leave to Amend |
| 06/29/10 | 1824 | 09-cv-5609 | Nokia | Order Granting Defendants' Joint Motion to Dismiss and Granting Philips Electronics North America Corp.'s Motion to Dismiss; Granting Plaintiffs Leave to Amend |
| 11/12/10 | 2142 | 09-cv-4997 | AT&T | Order Granting Defendants' Joint Motion to Dismiss |
| 09/18/12 | 6802 | 10-cv-4945 | Target | Order Granting Defendants' Joint Motion for Partial Summary Judgment on Due Process Grounds |

| Date | MDL Dkt. No. | Case No. | Plaintiff | Order |
|---|---|---|---|---|
| 03/20/13 | 7661 | 12-cv-3802 | Proview | Order Granting In Part Defendants' Joint Motion to Dismiss Proview's Second Amended Complaint |
| 05/06/13 | 7858 | 10-cv-4945 | Target | Order Granting In Part Target Plaintiffs' Motion for Reconsideration re Cartwright Act Claims |

**FTAIA**

| Date | MDL Dkt. No. | Case No. | Plaintiff | Order |
|---|---|---|---|---|
| 10/05/11 | 3833 | 07-md-1827 | IPPs | Order Denying Defendants' Joint Dispositive Motion Regarding Indirect Purchases Claims Based on Foreign Sales |
| 12/15/11 | 4346 | 07-md-1827 | IPPs | Order Denying Defendants' Joint Motion to Certify for Interlocutory Review the Court's Order Denying Defendants' Dispositive Motion Under The FTAIA |
| 05/04/12 | 5597 | 07-md-1827 | DPPs | Final Pretrial Scheduling Order; MIL No. 15 re Barred Claims Because They Arise from Foreign Commerce |
| 08/09/12 | 6422 | 09-cv-5840 | Motorola | Order Denying Defendants' Joint Motion for Summary Judgment on Motorola's Foreign Injury Claims |
| 08/29/12 | 6582 | 09-cv-5609 | Nokia | Order Denying Defendants' Joint Motion for Partial Summary Judgment as to Foreign Commerce Claims |
| 11/06/12 | 7111 | 09-cv-5840 | Motorola | Order Granting In Part and Denying In Part Samsung's Motion for Summary Judgment on Motorola's Foreign Contract and Unjust Enrichment Claims |

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Rule 50(b), HannStar moves for judgment as a matter of law that the plaintiffs did not present sufficient evidence to provide a non-speculative basis for an award of damages for their purchases of products containing TFT-LCD panels. HannStar also moves for judgment as a matter of law that the plaintiffs failed to present evidence sufficient to support a finding that they sustained injury in fact, or that they have satisfied the requirements of the Foreign Trade Antitrust Improvements Act ("FTAIA").

Trial in this matter began on July 23, 2013, and continued for more than five weeks. In their opening statement, the plaintiffs claimed damages totaling $774,000,000. This figure was the sum of $289,000,000 for the plaintiffs' "direct" purchases of products containing allegedly price fixed TFT-LCD panels, and $485,000,000 for the plaintiffs' "indirect" purchases. Trial Tr., Vol. 2, 231:12-16 (plaintiffs' opening statement).

More than forty witnesses testified at trial, either live or by deposition. The plaintiffs presented two damages experts. Dr. Bernheim testified that the alleged price fixing activity caused an approximately 20% average overcharge. He also testified as to the total damages alleged to result from the plaintiffs' purchases of TFT-LCD products from alleged conspirators or companies alleged to be owned or controlled by conspirators. Dr. Frankel, the plaintiffs' other expert, testified about the indirect damages the plaintiffs allegedly sustained. By the end of the trial, the damages claimed by the plaintiffs had decreased to $769,000,000. Trial Tr., Vol. 22, 3425:23-3426:1, 3428:11-19 (plaintiffs' closing argument).

The jury took less than a day to deliberate. Consistent with HannStar's admission in opening statement that it had violated the law and pleaded guilty to certain wrongful conduct, the jury found that HannStar participated in a conspiracy regarding TFT-LCD panels. MDL Dkt. 8562 at 2. The jury found that the Toshiba entities did not violate the law. *Id.*

The jury also rejected the exaggerated damages case presented by the plaintiffs. The jury found that the plaintiffs proved only $7,471,943 in direct damages. *Id.* at 5. No indirect damages were found. In sum, the jury concluded that the plaintiffs proved less than 1% of the damages they claimed.

As a result of the jury's finding that the Toshiba entities did not violate the law, the evidence presented by the plaintiffs does not support even the modest amount of damages found by the jury. Although the problem was explicitly called to their attention early and often, the plaintiffs elected to not present evidence that would allow the jury to make adjustments to Dr. Bernheim's damages calculations if it concluded that Toshiba or other alleged conspirators were in fact not liable. Because of the Toshiba verdict and the absence of any basis on which the damages might be adjusted to account for the non-liability of the Toshiba entities, any damages calculation is entirely speculative, and unsupported by evidence sufficient to allow a reasonable estimate of damages.

The plaintiffs also chose not to present evidence of the purchases made by any of the six plaintiffs. As a result, there is no basis on which a jury could reasonably conclude that any plaintiff was injured, determine the amount of any damages suffered by any plaintiff, or make any of the other findings necessary to provide a basis for an award of damages to, or a judgment in favor of, any plaintiff. Each plaintiff failed to present evidence sufficient to support a finding that it was injured in fact, or to quantify the amount of any harm it suffered.

The evidence established that the price fixing of which the plaintiffs complained occurred outside the United States. It was therefore incumbent on the plaintiffs to present evidence sufficient to satisfy the requirements of the FTAIA. Because the abbreviated evidence presented by the plaintiffs was not sufficient to do so, HannStar is further entitled to judgment as a matter of law that the plaintiffs failed to establish that the Sherman Act applies to their claims.

For these reasons, and as explained more fully below, HannStar is entitled to judgment as a matter of law on the issues discussed herein.

## I.    LEGAL STANDARDS.

Under Rule 50, judgment as a matter of law is appropriate when a party has been fully heard on an issue, and the court determines "that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party" on that issue. Fed. R. Civ. P. 50(a). "The standard for judgment as a matter of law under Rule 50 mirrors the standard for summary judgment under Rule 56." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Like any other issue essential to a plaintiff's case, a damages award must be based on sufficient evidence, and cannot be based on speculation or guesswork. *Assoc. Gen. Contractors of Cal. v. Cal. State Council of Carpenters,* 459 U.S. 519, 542–43 (1983) (citing speculative nature of damages as a basis for affirming dismissal of antitrust action); *Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*, 773 F.2d 1506, 1509-10 (9th Cir. 1985).

## II.    OVERVIEW OF THE PLAINTIFFS' DIRECT PURCHASES DAMAGES CASE.

The plaintiffs' expert Dr. Bernheim explained in his testimony that the "direct" purchases for which recovery was sought are those the plaintiffs made from finished product manufacturers that were allegedly members of the conspiracy to fix the prices of TFT-LCD panels. Trial Tr., Vol. 10, 1496:14-1500:8. The characterization of damages as "direct," and the availability of recovery under federal law, thus depended on proof that sellers in the direct category participated in a conspiracy with HannStar, or were owned or controlled by others that did.

Dr. Bernheim also explained that not all of the TFT-LCD products the plaintiffs purchased contained panels sold by participants in the alleged conspiracy, because some of the TFT-LCD panels contained in the products purchased by the plaintiffs originated with firms that were not alleged to have participated in the alleged conspiracy. Trial Tr., Vol. 11, 1642:14-1644:6. To account for the fact that fewer than all of the TFT-LCD products purchased by the plaintiffs contained allegedly price fixed panels, Dr. Bernheim made an adjustment to his damages calculations based on market share of the alleged conspirators. Trial Tr., Vol. 11, 1643:9 – 1644:6. To perform this adjustment, Dr. Bernheim assumed, based on an instruction from counsel, that a specific group of manufacturers participated in a TFT-LCD panel price fixing conspiracy. Trial Tr., Vol. 11, 1666:15-1668:8; Vol. 12, 1846:18-1847:25. Dr. Bernheim then used market share figures published by DisplaySearch, a market research company, to calculate the market share of the assumed conspirators. Trial Tr., Vol. 12, 1846:18-1847:25. Dr. Bernheim arrived at a "direct" damages calculation using these market shares. *Id*.; Trial Tr., Vol. 11, 1642:14-1644:6.

Dr. Bernheim testified that he could make adjustments to the direct damages calculations by excluding certain direct sellers or by adjusting his market share screen, if the evidence at trial

did not show that one or more entities he had assumed to be conspirators were not, in fact, conspirators. Trial Tr., Vol. 11, 1643:9-1644:6. If, for example, the jury determined that a particular direct seller was not a conspirator, and therefore does not "count" for calculating damages for direct purchases, the purchases made from that seller could be removed from the direct damages category. Trial Tr., Vol. 11, 1643:9-1644:6, 1666:9-1668:8; Vol. 20, 3206:17-3207:16. Similarly, entities assumed to be conspirators for purposes of calculating market share could be removed from the market share analysis upon a determination that the entity was not a conspirator. Dr. Bernheim referred to these adjustments as simple "bean counting." *Id.*

The list of assumed conspirators shrank over the course of the trial, as the plaintiffs acknowledged that they lacked evidence demonstrating participation in the conspiracy by various of the entities included on Dr. Bernheim's initial list. Near the end of the trial, Dr. Bernheim confirmed that his final damages total included market share calculations based on an assumption that twenty firms participated in the alleged conspiracy: Acer, AUO, BOE Hydis, Chi Mei, Chunghwa, Epson, HannStar, Hitachi, LGD, Mitsubishi, NEC, Philips, Quanta, Samsung SDI, Samsung SEC, Sanyo, Sharp, Toppoly, Toshiba, and Unipac. Trial Tr., Vol. 20, 3215:9-3217:17.

Dr. Bernheim never identified the market shares he assigned to the alleged conspirators, or explained how they changed over time. The Display Search reports on which Dr. Bernheim's market share calculations were apparently based were not offerd by the plaintiffs. There is no evidence of the market shares of the entities Dr. Bernheim assumed to be conspirators.

III. **THE EVIDENCE IS NOT LEGALLY SUFFICIENT TO SUPPORT A FINDING OF DIRECT PURCHASE DAMAGES.**

A. **The Jury's Finding That The Toshiba Entities Did Not Violate The Law Renders Any Damage Award Entirely Speculative.**

Dr. Bernheim testified that "Toshiba" was one of the entities he assumed to be a conspirator, and Wendy Fritz testified that Toshiba was one of "Best Buy's" suppliers of TFT-LCD products. Trial Tr., Vol. 20, 3216:10-24; Vol. 8, 1164:10-17. The jury found that Toshiba was not a conspirator. MDL Dkt. 8562 at 2. This has implications for two aspects of Dr. Bernheim's analysis. First, there is no evidence of the amount of TFT-LCD products the plaintiffs purchased from Toshiba, and thus no basis on which the adjustment required to reduce

the amount of direct purchase damages might rationally be made. Ms. Fritz did not provide any specifics about the products any of the plaintiffs purchased from Toshiba, the volume of any such purchases, or the time periods in which those purchases were made. The plaintiffs did not offer any other evidence about Toshiba's sales to any of the plaintiffs, and no such evidence was admitted.

The jury's finding that Toshiba did not violate the law obviously requires that purchases from Toshiba be excluded from the purchases Dr. Bernheim used to calculate direct damages, but because the plaintiffs did not present evidence of the volume of Toshiba's sales to any of the plaintiffs, it is not possible to calculate the amount of the Toshiba sales that must be excluded.

The jury's Toshiba finding also requires an adjustment to the market share calculations used by Dr. Bernheim. The plaintiffs did not provide the jury with the Toshiba market share used by Dr. Bernheim, or the market shares of any of the other alleged conspirators, at any time during the alleged conspiracy. Without the Toshiba market share numbers and the market shares of the other alleged conspirators Dr. Bernheim used in his direct damages calculation, there is no evidence that would allow a non-speculative calculation of the damages resulting from the plaintiffs' direct purchases. Fed. R. Civ. P. 50(a); *Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*, 773 F.2d 1506, 1509-10 (9th Cir. 1985) ("To establish the amount of its injury Dolphin must provide evidence such that the jury is not left to 'speculation or guesswork' in determining the amount of damages to award.") (citing *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 263-65 (1946)).

**B.      The Evidence Does Not Support A Finding That Other Alleged Conspirators Violated The Law.**

A similar problem is created by the absence of evidence sufficient to support findings that other of the entities used in Dr. Bernheim's direct purchase and market share calculations were conspirators. An essential element in any Section 1 case is proof of the alleged conspirators' "conscious commitment to a common scheme." *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 768 (1984). *See United States v. U.S. Gypsum Co.*, 438 U.S. 422, 463 (1978) (liability for price-fixing "c[an] only be predicated on the knowing involvement of each defendant,

considered individually, in the conspiracy charged"); *United States v. Melchor-Lopez*, 627 F.2d 886, 891 (9th Cir. 1980). The evidence presented by the plaintiffs was not sufficient to support a finding that several of the entities Dr. Bernheim assumed to be conspirators participated in a conspiracy, or a conspiracy in which HannStar participated.

### 1. Acer Display Co.

The only evidence claimed to support a finding of Acer's participation in a conspiracy is a communication between Makoto Chiba of Toshiba Matsushita Display with P.H. Lin of AUO, referencing a meeting that took place several years before, while Mr. Lin was working for Acer. The plaintiffs rely on a single email dated November 28, 2005 to support the notion that Mr. Chiba had contact with Mr. Lin several years earlier, while Mr. Lin was working at Acer. Tr. Ex. 753.

Toshiba's contacts with Acer cannot support a finding that Acer participated in a conspiracy as a result of the jury's determination that the Toshiba entities were not themselves conspirators. Beyond that, Mr. Chiba testified that his discussions with Mr. Lin, while Mr. Lin was at Acer, were during a time at which TMD was a customer of Acer, and was purchasing LCD modules from Acer. Tr. Ex. 9010 (M. Chiba Dep. Tr) at 73:18-74:1. There is similarly no evidence that HannStar had any communications with Acer, or that Acer and HannStar participated in a common conspiracy.

### 2. NEC LCD Technologies Ltd.

The plaintiffs claimed in response to a trial motion that the evidence supports a finding that NEC LCD Technologies Ltd. participated in a conspiracy because (a) an NEC entity attended the March 26, 1998 golf course meeting in Taiwan that the plaintiffs claim marks the beginning of the eight year conspiracy, and (b) a Sharp representative met in September 2006 with a representative of NEC LCD Technologies. Separately or additively, this evidence does not support a finding that NEC LCD Technologies participated in a conspiracy with HannStar.

There is no evidence that the representative of the NEC entity that allegedly attended the 1998 golf course meeting in Taiwan was a representative of NEC LCD Technologies. H.S. Kim of Samsung was the only witness to testify at trial about the 1998 golf course meeting, and Mr.

Kim testified that no agreements regarding price or supply were reached at that outing. Tr. Ex. 9002 (H.S. Kim Dep. Tr.) at 385:13-18 ("Q. . . . . But just to be clear, there was no such agreement reached at the 1998 meetings, correct? [A.] I agree."). Mr. Liu of HannStar testified that HannStar did not manufacture TFT-LCD panels until March 2000. The attendance at the 1998 golf course meeting is not sufficient to support a finding that any NEC entity participated in a conspiracy with HannStar.

There is also no evidence from which a jury could reasonably conclude that NEC LCD Technologies was in existence at the time of the 1998 golf course meeting. Before the testimony of their "summary witness," Mr. Gill, the plaintiffs represented to the Court that NEC LCD Technologies was formed in 2003. *See* Best Buy Trial Brief re: FRCP 1006 Summary Witness at Ex. C, p. 3, MDL Dkt. 8389 (On April 1, 2003, NEC Corp. established NEC LCD Technologies, Ltd.). The evidence of the timing of the formation of NEC LCD Technologies dropped out of the presentation the plaintiffs made through Mr. Gill, and Mr. Gill offered no testimony about when NEC LCD Technologies was formed. *See* Trial Ex. 2857, 2858 (Gill summary exhibits).

The only other evidence the plaintiffs claim is sufficient to support a finding that NEC LCD Technologies participated in a conspiracy involves a meeting between Sharp's Kazuyoshi Nakayama and NEC LCD Technologies. Mr. Nakayama testified that at a September 27, 2006 meeting he had with NEC LCD Technologies, he and the other attendees agreed to "exchange information periodically, with the main themes being LCD industry trends, and forecasts of demand, by application." Mr. Nakayama described this as "general market information." Tr. Ex. 9003 (K. Nakayama Dep.) at 272:9-19; Tr. Ex. 1078-01. There is no suggestion of any agreement on pricing, and no evidence that Sharp agreed on prices with NEC LCD Technologies.

### 3. Hydis Technologies Co., Ltd (BOE Hydis Technology Co., Ltd.).

The plaintiffs claim that evidence that a representative of Hydis attended the "vendor party" meetings about which Sonia Chen of Samsung testified is sufficient to support a finding that Hydis participated in a conspiracy. The evidence does not support such a finding.

First, there is no evidence in Ms. Chen's testimony or elsewhere that she or anyone else reached agreements on prices at the vendor parties with Hydis. Second, Ms. Chen testified that

the vendor parties were low level meetings attended by employees "without any authority to make any decisions" about sales goals or target prices. Trial Tr., Vol. 5, 690:10-691:9; 749:21-750:22. *See In re Baby Food Antitrust Litig.*, 166 F. 3d 112, 125 (3rd Cir. 1999) ("Evidence of sporadic exchanges of shop talk among field sales representatives is insufficient to survive summary judgment [in a Sherman Act case].").

The plaintiffs have claimed that information included in Exhibit 299, which Ms. Chen authenticated but did not specifically testify about, supports a finding that Hydis participated in a conspiracy. This document, an email from a CPT employee to Ms. Chen, bears the subject line "2004 sales target" and simply says, as to Hydis among other companies, "Hydis:2.5M." No pricing information appears in this document. There was no testimony about the document, no indication of where the information came from, or its significance. Speculation about this single document does not provide a basis for a finding that Hydis participated in a conspiracy.

### 4. Unipac Optoelectronics.

Brian Lee of Chunghwa testified that Exhibit 348, dated March 9, 2001, was "an exchange of volume and sales information," as well as "an exchange about prices." Trial Tr., Vol. 2, 316:2-11 (B. Lee). Importantly, this exchange of information only concerned pricing for February and March 2001, that is, past and present pricing. Tr. Ex. 348. Mr. Lee categorically denied reaching any agreements to fix prices at this time. Trial Tr., Vol. 3, 386:19-387:1 ("Q. And those were meetings before the first crystal meeting; is that true? A. Correct. Q. And were prices both discussed and agreed upon in those meetings or just discussion of price? A. We just exchange some information, some market information. Of course, that include in the price information, but we did not reach a price agreement or fix a price."). One meeting, without agreement on prices and without the participation of HannStar, does not provide a basis for a finding that Unipac joined a conspiracy with HannStar.

### 5. Mitsubishi Electronics Corp.

There is no evidence that the representative of the Mitsubishi entity that allegedly attended the 1998 golf course meeting was a representative of Mitsubishi Electronics Corp. Furthermore, as discussed above, no agreements regarding price or supply were reached at that outing. Tr. Ex.

9002 (H.S. Kim Dep. Tr.) at 385:13-18.

The evidence is that Mitsubishi was invited, but declined, to join the Crystal Meeting conspiracy. Tr. Ex. 9; Trial Tr., Vol. 2, 316:2-20 (B. Lee); Trial Tr., Vol. 3, 381:23-382:18 (B. Lee). A rejected invitation to collude cannot establish liability for a price-fixing conspiracy. *See, e.g.*, *In re Citric Acid Litig.*, 191 F.3d 1090, 1098 (9th Cir. 1999); *Liu v. Amerco*, 677 F.3d 489, 493 (1st Cir. 2012); *Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan*, 203 F.3d 1028, 1036 (8th Cir. 2000).

### 6.      Royal Philips Electronics N.V.

The plaintiffs rely on communications between Japanese companies referring to an unidentified Philips entity to establish that Royal Philips Electronics N.V. participated in a price fixing conspiracy. The plaintiffs' evidence is insufficient. One such communication the plaintiffs point to is an email Yuuichi Kumazawa of Hitachi sent in 2004 "reporting on information received from Toshiba regarding Philips." Tr. Ex. 547. However, Philips was referenced as a customer of TMD in Mr. Kumazawa's email. *Id.* ("TMD has decided to accept an order for [the Nokia] project through [Philips], and it will begin in the fall."). The plaintiffs also rely on testimony by Katsuyuki Furujo of Epson that he exchanged pricing information with Philips from 1999 to 2004. Tr. Ex. 9007 (Katsuyuki Furujo Dep. Tr.) at 35:25-36:6, 36:20-24. Mr. Furujo, however, never testified as to the Philips entity with which he exchanged information, nor how often such information was exchanged. Tr. Ex. 9007 (Katsuyuki Furujo Dep. Tr.) at 35:25-36:6, 36:20-24. Furthermore, Mr. Furujo denied reaching agreements with any of the entities with which he exchanged information. Tr. Ex. 9007 (Katsuyuki Furujo Dep. Tr.) at 247:2-248:14, 249:19-250:18, 251:1-17. "References to a general corporate name" cannot establish liability for a specific entity, especially when the alleged co-conspirators are "members of extensive and complex corporate families" (Order Granting in Part Summary Judgment as to Conspirators Not Alleged in the Complaints at 8, MDL Dkt. 7419 (Dec. 26, 2012)), and information exchange without an agreement cannot support a finding of liability.

### 7.      Toppoly Optoelectronics.

The plaintiffs rely on Sonia Chen's testimony that she created a document containing a

summary of capacity at manufacturing lines for AUO, CMO, CPT, HannStar, Quanta, PVI, Toppoly and InnoLux as evidence that Toppoly was a conspirator. Trial Tr., Vol. 5, 744:7-746:17. The only other evidence the plaintiffs rely on in support of a finding that Toppoly was a conspirator is testimony by AUO's David Su, based on a Mary 19, 2006 email, that "it appears that [two AUO employees] have exchanged market intelligence" with Toppoly.

Neither of these events supports a finding that Toppoly Optoelectronics participated in a conspiracy, or a conspiracy in which HannStar participated. Ms. Chen, on whom the plaintiffs rely, reported that Toppoly never attended the Crystal Meetings or informal "vendor parties." Trial Tr., Vol. 5, 757:2-4. Mr. Su, who simply identified senders and recipients of an email, acknowledged an exhibit that contained capacity information about digital camera LCDs. *See* Ex. 9011, at pgs. 163:23-168:8; Trial Ex. 720 (Dep. Ex. 5613). No pricing information was exchanged.

**C.      There Is No Evidence That HannStar Had Unlawful Contacts With Parties That Did Not Attend Crystal Meetings.**

HannStar admitted in opening statement and at other times that it participated in the Crystal Meetings, that it accepted responsibility for this participation, and that it had pleaded guilty to certain of its activities. Trial Tr., Vol. 2, 232:15-233:9 (HannStar opening statement); Trial Tr. Vol. 22, 3431:17-3432:18 (HannStar closing argument). The group of companies Dr. Bernheim assumed to be conspirators included the following Crystal Meeting attendees: AUO, Chi Mei, Chunghwa, LG Display, and Samsung SEC. There is no evidence that HannStar engaged in price fixing activity, exchanged competitive information, or otherwise improperly communicated with any of the remaining entities.

As explained above, the evidence is not sufficient to support a finding that Acer, NEC, Hydis, Unipac, Mitsubishi, Philips, or Toppoly engaged in any conspiracy in which HannStar participated. Similarly, there is no evidence that HannStar had any improper contacts with any of these entities.

In their failed effort to prove Toshiba's participation in a conspiracy, the plaintiffs attempted to establish that other Japanese companies participated in, or were otherwise somehow

involved in, the Crystal Meetings. However, the evidence was unrefuted that the Japanese companies invited to attend, or otherwise contacted about participating in the Crystal Meetings, refused to attend. Trial Tr., Vol. 2, 303:2-25 (B. Lee) (Japanese attendance at Crystal Meetings "not ultimately achieved"); Trial Tr., Vol. 3, 382:15-18 (B. Lee) (Mitsubishi declined to attend); Trial Tr., Vol. 5, 795:22-796:15 (S. Chen) (no recollection of communications with Japanese); Trial Tr., Vol. 3, 381:1-382:6 (B. Lee) (HannStar contacted Hitachi; Hitachi declined to attend). Sonia Chen testified that a representative from Sharp attended the "vendor parties," but the vendor meetings were largely "social events" at which no agreements on prices were made. Trial Tr., Vol. 5, 692:1-693:5; 749:21-750:22 (S. Chen). The other attempts to prove participation by the Japanese companies in the Crystal Meetings similarly failed.

    **D.    The Plaintiffs Failed To Provide Sufficient Evidence Of Ownership Or Control.**

    The plaintiffs allege standing based upon the "ownership or control" exception to *Illinois Brick*. *In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 749 (9th Cir. 2012) ("[I]ndirect purchasers may sue when customers of the direct purchaser own or control the direct purchaser or when a conspiring seller owns or controls the direct purchaser."). To support their alleged standing, the plaintiffs were required to demonstrate that they purchased LCD products from vendors that were owned or controlled by entities that participated in the alleged conspiracy. *See ATM Fee*, 686 F.3d at 747.

    The plaintiffs did not present evidence upon which a reasonable jury could find that they have standing under *ATM Fee* regarding purchases from LG entities. Because of one of the plaintiffs' failures of proof, the identity of the LG entity from which one or more of the plaintiffs purchased is unknown. The theory of ownership or control is, however, revealed in the information presented through the plaintiffs' summary witness. The plaintiffs cannot rely on the less-than-majority interests of LG Electronics, Inc. ("LGE") and Koninklijke Philips Electronics N.V. ("Royal Philips") in LG Display Co., Ltd. (f.k.a. LG Philips LCD Co., Ltd.) ("LG Display") to establish any relevant ownership or control. LG Display is a conspirator, but it is not proper to "infect" the LG and Philips corporate families simply because LG Electronics and Royal Philips

each held less than majority interests in LG Display. The Ninth Circuit has held stock ownership "that amounts to less than a majority, is not sufficient proof of domination or control." *ATM Fee*, 686 F.3d at 757. At no point did either LGE or Royal Philips hold a majority share of LG Display. *See* Trial Ex. 2858-0002. In addition, at no point did LGE or Royal Philips have control over LG Display's board of directors. *See* Trial Ex. 2857_0010-11; Trial Tr. 2140:12-23; *see also ATM Fee*, 686 F.3d at 758 (holding that ownership or control exception was not met where Bank Defendants did not have "control of Concord's board of directors").

## IV. THE PLAINTIFFS FAILED TO PROVE THE REQUISITE INDIVIDUAL INJURY IN FACT.

Question 8 on the verdict form asked: "Did Best Buy prove, by a preponderance of the evidence and in accordance with the instructions given to you, that it was injured as a result of the conspiracy in which one or both of the defendants knowingly participated?" MDL Dkt. 8562 at 4. The jury indicated "yes" on the verdict form. *Id.*

After failing throughout the trial to present the individual proof necessary to support a finding that any plaintiff was injured, or to establish the amount of the damages that might be due any plaintiff, the plaintiffs were allowed to employ the "Best Buy" convention in the verdict form, as if there were only a single plaintiff. There was no legal basis for elimination of the requirement of individual proof of individual injury. The plaintiffs did not present any evidence of a right to joint recovery, or anything else that would excuse them from the requirement of individualized proof.

The complaint identifies six different plaintiffs that asserted claims against HannStar: Best Buy Co., Inc.; Best Buy Purchasing LLC; Best Buy Enterprise Services, Inc.; Best Buy Stores, L.P.; Bestbuy.Com, L.L.C.; and Magnolia Hi-Fi, Inc. These six separate entities were each required to establish injury in fact in order to sustain their claims for damages. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 126 (1969). To recover damages, the plaintiffs had to prove both the fact of damage and the amount of damage. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827, 2012 WL 5383203, at *1 (N.D. Cal. Sept. 22, 2012) ("Two separate proofs are required: 'the Fact of damage and the Amount of damage.'"). To meet its

burden of proof on injury in fact, each plaintiff was required to "establish with reasonable probability the existence of a causal connection between defendants' violation of the antitrust law and plaintiffs' revenue-impairing injury." *Id.* (quoting *Knutson v. Daily Review, Inc.*, 468 F. Supp. 226, 229 (N.D. Cal. 1979)).

The case the plaintiffs presented at trial did not distinguish between or among the individual plaintiffs. The "Best Buy" shorthand may have been useful for some purposes, but it is not a substitute for the requirements of proof of injury in fact as to each plaintiff bringing a claim.

Proof of injury in fact resulting from purchases of price fixed goods, or products containing price fixed goods, is typically established by presenting evidence of purchases of the goods. Purchases are often proved through purchase orders, receipts, invoices, or other documentation of purchases or sales. *Arthur Murray, Inc. v. Oliver*, 364 F.2d 28, 30 (8th Cir. 1966) (relying on "books, records, accounting data, and audit reports" to calculate damages); *Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 64 F.R.D. 43, 48-49 (D. Del. 1974) (stating that proof of injury typically requires "purchase invoices in a suit by purchasers against alleged price fixers"). In the DPP case, for example, Texas Digital Systems presented invoices as proof of payment for purchases of TFT-LCD panels from Sharp. DPP Trial Tr., Vol. 8, 1164:20-1172:13 (D. Gray).

The problems resulting from this strategy were discussed between the parties and the Court at the jury instructions conference. The defendants objected to providing the jury with instructions that referred to "Best Buy" as a single plaintiff, rather than as the multiple plaintiffs who brought suit against HannStar. Trial Tr., Vol. 21, 3317:5-3321:10. The defendants specifically identified the proof problems for the individual plaintiffs that were presented by the plaintiffs' strategic decision to present evidence as to "Best Buy" without making distinctions between or among the different plaintiffs. *Id.* Over the defendants' objections, the Court instructed the jury as to "Best Buy," rather than the individual plaintiffs, consistent with Mr. Silberfeld's request. The proof problems of the individual plaintiffs occasioned by the plaintiffs' trial and evidence strategies are not solved by the instructions to the jury. Those problems remain, and result in a failure to prove injury in fact.

## V. THE PLAINTIFFS FAILED TO PROVE THAT THE APPLICATION OF MINNESOTA LAW TO HANNSTAR IS CONSTITUTIONAL.

The plaintiffs' failure to present proof of purchases also requires the conclusion that the plaintiffs have failed to show that application of Minnesota law to HannStar comports with the Due Process Clause of the Fourteenth Amendment. Application of Minnesota law to HannStar requires that the plaintiffs show either that they made purchases of products containing price fixed TFT-LCD products in Minnesota, or that conspiratorial activity took place in Minnesota. *See AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1113 (9th Cir. 2013) ("we hold in this case that the Cartwright Act can be lawfully applied without violating a defendant's due process rights when more than a *de minimis* amount of that defendant's alleged conspiratorial activity leading to the sale of price-fixed goods to plaintiffs took place in California."); *Pecover v. Electronic Arts Inc.*, 633 F. Supp. 2d 976, 984 (N.D. Cal. 2009) (dismissing antitrust claims under laws of 18 states in which plaintiffs did not purchase products).

No evidence was presented at trial that any conspiratorial conduct took place in Minnesota. Ms. Fritz testified generically that "Best Buy" enters into certain "Vendor Master Agreements" with vendors, and that those agreements are entered into by "Best Buy" in Minnesota. Trial Tr., Vol. 8, 1151:8 – 1153:1. This testimony is insufficient to support a finding that any individual plaintiff made any particular purchase, or the location of that purchase. As a result, no plaintiff established that it is constitutionally permissible to apply Minnesota law to HannStar. Furthermore, the absence of evidence of purchases also compels a finding that no plaintiff established that it has standing to assert claims under Minnesota law against HannStar.

## VI. NO DAMAGES CAN BE AWARDED BASED ON PURCHASES OF SMALL PANEL PRODUCTS.

The evidence at trial was uncontested that small panels, such as those used in mobile phone applications, were not discussed at the Crystal Meetings. Trial Tr., Vol. 3, 378:19-379:5 (B. Lee); Trial Tr., Vol. 4, 615:9- 15 (S. Park). Thus, no agreements on the prices of small panels was ever reached at a Crystal Meeting. Trial Tr., Vol. 2, 335:14 - 338:2 (B. Lee); Trial Tr., Vol. 4, 615:22-616:8 (S. Park). Brian Lee was unequivocal in his testimony. Trial Tr., Vol. 3, 378:19 -

379:5 (B. Lee) ("Q. Now, sir, at the crystal meetings, the attendees did not discuss panels for cell phone application, correct?  A.  Absolutely no.").  Mr. Lee further testified that although there were some Taiwan LCD panel manufacturers making small panels, those manufacturers were not invited to the Crystal Meetings because small panels were not a part of the Crystal Meetings. Trial Tr., Vol. 2, 337:21-338:8 (B. Lee).

No evidence was presented at trial establishing that HannStar engaged in any improper communications with any manufacturer of small panels about fixing the prices of small panels. There was not even any evidence that HannStar exchanged any type of competitive information related to small panels with any other party.

As HannStar did not make or sell small panels for use in mobile phone applications, it was not a competitor in the mobile phone panel market. The "per se" rule applicable to price fixing prohibits price fixing by competitors.  *Broadcast Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 7-8 (1979).  During the relevant period, HannStar did not compete in the market for small TFT-LCD panels.  Proof of a section 1 violation involving small panels would have required proof sufficient to establish liability under the Rule of Reason, proof the plaintiffs did not try to make.

In short, there is no evidence that HannStar participated in any conspiracy that included agreements to fix the prices of small TFT-LCD panels.  HannStar is entitled to judgment as a matter of law on any issue involving damages associated with products containing small TFT-LCD panels.

## VII.    THE PLAINTIFFS FAILED TO SATISFY THE REQUIREMENTS OF THE FTAIA.

HannStar also seeks judgment as a matter of law on the applicability of the FTAIA.  The evidence presented at trial supported a conclusion that the prices of at least some LCD panels sold in transactions that occurred outside the United States were fixed.  Because the evidence revealed foreign conduct, the plaintiffs were required to present evidence that would allow a finding that the requirements of the FTAIA were satisfied in one way or another.  The evidence was not sufficient to support such a finding, and HannStar is therefore entitled to judgment as a matter of

1   law that the Sherman Act does not apply to the conduct found by the jury in its answer to

2   Question 2.

3       **A.      The FTAIA Applies To The Price Fixing Conduct Found By The Jury In The
                 Answer To Question 2.**

4

5       Section 1 of the Sherman Act does not "apply to conduct involving trade or commerce

6   (other than import trade or import commerce) with foreign nations unless" either the "domestic

7   injury," "import commerce," or "export commerce" exception set forth in 15 U.S.C. section 6a is

8   satisfied.  In the preamble to 15 U.S.C. section 6a, the FTAIA removes "from the Sherman Act's

9   reach, (1) export activities and (2) other commercial activities taking place abroad, *unless* those

10  activities adversely affect such domestic commerce, imports to the United States, or exporting

11  activities of one engaged in activities within the United States."  *F. Hoffmann-La Roche Ltd. v.*

12  *Empagran S.A.*, 542 U.S. 155, 161 (2004).  The "technical language" of FTAIA "initially lays

13  down a general rule placing *all* (nonimport) activity involving foreign commerce outside the

14  Sherman Act's reach.  It then brings such conduct back within the Sherman Act's reach *provided*

15  *that* the conduct *both* (1) sufficiently affects American commerce, *i.e.*, it has a 'direct, substantial,

16  and reasonably foreseeable effect' on American domestic, import, or (certain) export commerce,

17  *and* (2) has an effect of a kind that antitrust law considers harmful, *i.e.*, the 'effect' must 'giv[e]

18  rise to a [Sherman Act] claim."  *Id*. at 162.

19      The language of the preamble of section 6a refers to "trade or commerce . . . with foreign

20  nations," but the Supreme Court held in *Empagran* "that the FTAIA's general rule applies where

21  the anticompetitive conduct at issue is foreign."  *Id*. at 163.

22      Under the FTAIA "general rule," the price fixing acknowledged by HannStar and found

23  by the jury is therefore "outside the Sherman Act's reach" because it took place in a foreign

24  country.  Unless the evidence presented at trial would support a finding that one of the exceptions

25  set forth in section 6a(1)(A) or (B) applies, HannStar is entitled to judgment as a matter of law

26  that the FTAIA removes the conduct in issue from the reach of the Sherman Act.

27

28

**B.** **The Plaintiffs Did Not Present Evidence Sufficient To Support A Finding Of Price Fixing In Import Commerce.**

Before the domestic injury, import commerce, and export commerce exceptions of section 6a(1)(A) and (B) are considered, it is necessary to pause to confirm that the FTAIA applies to the conduct in issue. As a result of the parenthetical in the preamble to section 6a, "[i]mport trade and commerce are excluded from the coverage of the FTAIA in the same way that domestic interstate commerce is excluded." *Minn-Chem, Inc. v. Agrium Inc.*, 683 F.3d 845, 854 (7th Cir. 2012) (*en banc*). That import trade or commerce is excluded from the FTAIA "means only that conduct in both domestic and import trade is subject to the Sherman Act's general requirements for effects on commerce, not to the special requirements spelled out in the FTAIA." *Id*. at 854. The application of ordinary Sherman Act requirements to import trade must, of course, be distinguished from the operation of the "import commerce" exception set forth in section 6a(1)(A) whereby foreign conduct with a "direct, substantial and reasonably foreseeable effect" on import commerce is "brought back within the Sherman Act's reach." *Empagran*, 542 U.S. at 162.

As the Seventh Circuit noted in *Minn-Chem*, it is "straightforward import commerce" that falls within the reference to "import trade or import commerce" in the preamble. *Minn-Chem.*, 683 F.3d at 857. The price fixing activity shown in the case the plaintiffs made at trial did not occur in import trade or commerce. There was no evidence of price fixing of any finished products, and no evidence that price-fixed LCD panels were imported, much less evidence that of price fixing in any import transactions by HannStar, or pursuant to any conspiracy for which the evidence would allow a finding that HannStar is liable. The price fixing activity having occurred abroad and not having involved import trade or commerce, the FTAIA applies, and the plaintiffs' ability to recover under the Sherman Act was thus dependent on proof that the requirements of section 6a(1)(A) or (B) were satisfied.

The plaintiffs may believe that Question 3 properly addressed the question of price fixing in import commerce. Because there was no evidence of price fixing in import commerce, it does not matter whether the answer to Question 3 amounts to a finding of price fixing in import

commerce, but it does not.  Price fixing was found as to TFT-LCD panels only in the jury's answer to Question 2; Question 3 disjunctively asked whether the conspiracy "involved" panels "and/or" finished products that were imported into the United States.  The "yes" answer to Question 3 therefore does not allow a conclusion that the conspiracy "involved" imported panels.  Even if it did, the evidence does not support a finding of price fixing in import commerce.

**C.**     **The Jury Rejected The Domestic Injury Exception In The Answer To Question 5.**

The plaintiffs attempted to obtain a verdict that would "bring the conduct back within the Sherman Act's reach" by seeking an affirmative answer to Question 5, which addressed the "domestic injury" exception, but the jury answered Question 5 in the negative.  The Sherman Act therefore cannot be held applicable to the conduct in issue on the basis of a "direct, substantial and reasonably foreseeable effect on trade or commerce in the United States."

**D.**     **The Plaintiffs Did Not Seek A Finding On The Applicability Of The Export Commerce Exception.**

Because there was no jury question addressing the "import commerce" exception, it is not necessary to consider whether the evidence would have supported a finding of a "direct, substantial and reasonably foreseeable effect" on export commerce.  Moreover, given the final clause of section 6a, it would have been pointless for the plaintiffs to have tried to satisfy the export commerce exception.  Regardless, there was no evidence of an effect on export commerce in the United States, and no evidence of a direct, substantial and reasonably foreseeable effect on export commerce.

**E.**     **There Was No Finding That The Import Commerce Exception Applies, And No Evidence That Would Have Supported Such A Finding.**

As already mentioned, the jury concluded in its answer to Question 5 that the domestic injury exception does not apply.  The jury was not asked to determine whether the price fixing found by the jury had a "direct, substantial and reasonably foreseeable effect   . . . on import trade or import commerce with foreign nations," the other subject addressed in 15 U.S.C. section 6a(1)(A), and there is no reason to believe it would have provided an affirmative answer.

1    Because there is thus no basis for a judgment in the plaintiffs' favor based on the verdict, there is

2    no need for judgment as a matter of law on the applicability of the import commerce exception.

3           The plaintiffs' post-trial comments suggest, however, a possibility that they believe there

4    was a finding that the import commerce exception applies.  HannStar therefore seeks judgment as

5    a matter of law on the question of whether the evidence was sufficient to support a finding that

6    the price fixing found by the jury had a "direct, substantial and reasonably foreseeable effect . . .

7    on import trade or import commerce with foreign nations."

8           It should be undisputed that the jury was not asked to address the applicability of the

9    import commerce exception.  The plaintiffs did not submit a question analogous to Question 5,

10   with "import trade or import commerce with foreign nations" substituted for "trade or commerce

11   in the United States."  Question 3 did not include any mention of a "direct, substantial and

12   reasonably foreseeable effect on import trade or import commerce."  The answer to Question 3 is

13   therefore clearly not sufficient to satisfy the import commerce exception.

14          The jury's answer to Question 5 rejected the idea of a "direct, substantial and reasonably

15   foreseeable effect" on domestic commerce, and the same failing is present with respect to import

16   commerce.  The price fixing supported by the evidence was limited to LCD panels.  There was no

17   evidence of price fixing of finished products, and no evidence by which HannStar – a panel

18   maker – could have been found liable for fixing the prices of finished products.  As already

19   mentioned, there was no evidence of any price fixing in import transactions, and no theory by

20   which any effect on finished products containing LCD panels could be said to be "direct."

21          In *United States v. LSL Biotechs*, 379 F.3d 672 (9th Cir. 2004), the Ninth Circuit held that

22   "direct" for purposes of the FTAIA carries the same meaning the term carries in the Foreign

23   Sovereign Immunities Act, with the result that an effect is "direct" only when it "follows as an

24   immediate consequence of the defendant's activity."  *Id*. at 680.  On the prior occasions on which

25   the Court has considered this aspect of the FTAIA, the record did not include evidence of the type

26   presented at trial and never challenged by the plaintiffs.  In the light of the undisputed trial record,

27   there is no evidence sufficient to support a finding that the price fixing of TFT-LCD panels

28   established by the evidence had a "direct" effect on import trade or commerce.

The "direct" damages found by the jury in the answer to Question 9, were in fact not "direct" as the term is usually employed. The "direct" damages were based on the purchase of finished products containing LCD panels from alleged conspirators or sellers owned or controlled by alleged conspirators, not actual direct purchases of panels. The plaintiffs' direct damages case, as presented through Dr. Bernheim, was based on an allegation that price fixing resulted in an increase in the prices of the panels sold to makers of finished products, who incorporated the panels into their products, and passed on the increased cost to the plaintiffs.

The scenario on which the plaintiffs' case was based does not present a "direct" effect on import trade or commerce within the meaning of the FTAIA as applied in *LSL Biotechs*. The effect alleged by the plaintiffs depends on intermediate actions by parties other than the alleged conspirators, and results of those actions that are not inevitable. As agreed by all of the experts called by the plaintiffs and the defendants, pass on decisions are complex and may be variable in outcome at all levels of distribution, as to companies, products, geography, and time. The Best Buy buying practices described in the testimony of various witnesses show that there is no certainty, in the context of a specific transaction or otherwise, that cost increases will be passed on or in what amount. Even the size of the alleged overcharges claimed by the plaintiffs varied over time, and it is undisputed that there were times during which any price fixing that occurred had no impact. An overcharge in the price of LCD panels does not "immediately," automatically, or inevitably result in an increase in the price of finished goods, and there is no basis on which it can be said that the price fixing supported by the evidence in this case caused a "direct" effect on import commerce.

F.     **The Plaintiffs Failed To Establish An Intentional And Substantial Effect In The United States.**

Question 4 on the verdict form asked: "Did Best Buy prove, by a preponderance of the evidence, and in accordance with the instructions given to you, that the conspiracy involving these imported TFT-LCD panels and or finished products produced substantial intended effects in the United States." MDL Dkt. 8562 at 5. The jury's response of "yes" is not supported by sufficient evidence.

The Supreme Court held in *Hartford Fire* that the FTAIA includes a subjective intent requirement. *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 796 (1993) (holding that the Sherman Act does not extend to foreign conduct unless the foreign conduct was "meant to and did in fact produce some substantial effect in the United States").

The conspiracy Best Buy sought to prove at trial was based on foreign conduct. The evidence at trial demonstrated that TFT-LCD panels were manufactured in foreign factories and then sold and delivered to foreign original design manufacturers (ODMs), foreign systems integrators (SIs), or foreign original equipment manufacturers (OEMs), including the foreign affiliates of many of the OEMs from which Best Buy claims to have purchased products, e.g., HP, Apple, and Sony. Trial Tr. 1728:8-14 (D. Bernheim) ("Q. And you had [the defendants'] global purchases and sales because many of these transactions occurred in Asia, correct? A. Yes. Q. So in other words, if the panel fab is in Taiwan, the panel might physically go to China before it goes into the United States, correct? A. It could. Q. Because maybe in China, they're assembling the laptop or the monitor, correct? A. Yes, it could."); Trial Ex. 10011 (J.Y. Ho (CMO) Dep.) at 133:1-2 ("Most of our products were sold to ODM in, for example, Chinese market or Asia."); Trial Ex. 9003 (K. Nakayama (Sharp) Dep.) 54:21-55:3 ("At that time we were engaged in businesses with other major customers as well. And as you know, Toshiba, Sony, Fujitsu, Dell were major users. And aside from that, there were also ODMs where -- which were companies that were their contract manufacturers, such as EMS, Quanta, Compal, et cetera. There were a few of them."); Trial Tr. 2395:12-2396:6 (T. Ogawa (TMD)) (testifying that HannStar in Taiwan sold panels to Toshiba Corporation in Japan, which then incorporated the panels into finished products for sale). Only then were TFT-LCD products sold to customers in the United States, such as Best Buy. Trial Tr. 1012:24-1013:4 (T. Amano (TMD)) ("Q. And you understood at the time, in 2003, that HP was buying notebook panels from companies like Toshiba, incorporating them into finished products, and then selling them to retailers like Best Buy. You understood that, did you not? A. Yes.").

The subjective intent element in *Hartford Fire* is more demanding than the reasonable foreseeability requirement applicable to the domestic injury exception of the FTAIA. It is not

HANNSTAR DISPLAY CORPORATION'S
RULE 50(b) MOTION
NO. 07-MD-1827 SI; NO. 10-CV-4572 SI

enough for the plaintiffs to point to evidence of simple awareness that panels they sold might be incorporated into products that were eventually sold in the United States.  The plaintiffs were required to prove that the conspirators subjectively "meant to and did in fact produce some substantial effect in the United States."  *Hartford Fire*, 509 U.S. at 796.  The plaintiffs failed to present such evidence, and a reasonable jury could not conclude that conspirators subjectively intended that their price fixing activity would produce some substantial effect in the United States.

## VIII.  CONCLUSION.

For the foregoing reasons, HannStar's motion should be granted.


Dated:  October 2, 2013                                     FREITAS TSENG & KAUFMAN LLP


                                                              */s/Jason S. Angell*
                                                              Jason S. Angell
                                                              Attorneys for Defendant
                                                              HannStar Display Corporation